# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 2, 2011

Lyle W. Cayce
Clerk

No. 10-50992

MICHAEL SHORT,

Plaintiff - Appellee

v.

SHERIFF ARVIN WEST, Individually and in his capacity as Sheriff of
Hudspeth County, Texas,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:

In this action brought under 42 U.S.C. § 1983, Defendant-Appellant
Sheriff Arvin West ("Sheriff West") filed an interlocutory appeal of the district
court's denial of his motion for summary judgment based on qualified immunity.
We DISMISS the appeal in part and AFFIRM the district court's order in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michael Short ("Short") is an officer in the El Paso Police
Department ("EPPD"). He was assigned to a narcotics task force, and was cross-
deputized by the District Attorney, Jaime Esparza, to be a narcotics task force

No. 10-50992

officer for the 34th Judicial District.  The 34th Judicial District includes both El Paso and Hudspeth counties.

On December 4, 2008, members of the task force, including Officer Short, went to Hudspeth County after hearing a tip that narcotics would be traveling from Hudspeth County to El Paso County.  Short wore his uniform and was in a marked EPPD vehicle.  In Hudspeth County, Short stopped a car matching the description of the suspected vehicle.  During the traffic stop, a Hudspeth County Sheriff Department ("HCSD") deputy, Laura Galvan ("Galvan"), arrived on the scene.  After the traffic stop was completed, Galvan asked Short about his purpose in Hudspeth County, and Short explained the nature of his assignment.  Satisfied with his identification, Galvan offered to assist Short if needed, and returned to her unit.  Galvan then notified HCSD dispatch about the presence of EPPD officers in Hudspeth County and the purpose of their assignment.

HCSD dispatch contacted Sheriff West at home to inform him of the EPPD officers' presence and that they were performing traffic stops in Hudspeth County.  Sheriff West is the top law enforcement officer in Hudspeth County.  He knew that cloned police cars had been used by criminals in the area, so he decided to investigate the EPPD officers' presence personally.  Sheriff West instructed dispatch to contact his deputies and find out whether the EPPD officers were in fact law enforcement personnel.  Further, Sheriff West ordered the deputies to round up the task force officers and escort them to his office in Sierra Blanca.  HCSD dispatch then notified the HCSD deputies of Sheriff West's orders.

HCSD Lieutenant Robert Wilson ("Wilson"), responding to Sheriff West's orders, located Short's operational supervisor, EPPD Sergeant Steven Lopez ("Lopez"), and asked to see Sergeant Lopez's identification.  Sergeant Lopez produced identification showing him to be an officer with the EPPD and the task force, and as a cross-deputized agent of Immigration and Customs Enforcement.

No. 10-50992

Lieutenant Wilson returned Lopez's identification without examining it. Wilson instructed Lopez to round up the task force members and follow him to the HCSD office in Sierra Blanca. Sergeant Lopez refused and indicated the task force would return to El Paso County. Lieutenant Wilson reiterated his instructions, and, upon Lopez's further refusal to follow him, contacted Sheriff West to apprise him of the situation. Sheriff West instructed Lieutenant Wilson to escort the officers to the Fort Hancock Substation in lieu of the Sierra Blanca HCSD office.

In the meantime, Sergeant Lopez contacted EPPD Lieutenant Fernando Yañez ("Yañez") via cell phone. Yañez asked to speak to Lieutenant Wilson, and, Lopez having passed the phone to Wilson, asked Wilson what charges were being brought against the task force officers. Wilson indicated that no charges existed, but stated Sheriff West had ordered that he round up the task force. Lieutenant Yañez stated that such an order violated the constitutional rights of the task force officers. Wilson handed the phone back to Sergeant Lopez and reiterated his order three times that Lopez round up the task force and accompany Wilson to Fort Hancock, raising his voice each time. Finally, Sergeant Lopez contacted the task force members and ordered them to return to El Paso County, as he prepared to follow Lieutenant Wilson to Fort Hancock.

On Sergeant Lopez's command, Officer Short drove toward the location of EPPD Officer Mike Tevis ("Tevis") to inform him of Lopez's order, leaving the company of EPPD Officer Herman Joe Hicks ("Hicks"), as Hicks began to return to El Paso County. Having located Tevis, both Tevis and Short then caravanned toward Interstate 10 West ("I-10"), but were delayed as a crossing train blocked their route. While waiting for the train, they received a radio communication from Officer Hicks indicating he was surrounded by five to seven HCSD deputies just over the I-10 overpass. Hicks stated he had been ordered to return to the Fort Hancock substation with the HCSD deputies.

3

No. 10-50992

Once the train passed, Officers Tevis and Short traveled to Hicks' location and observed the HCSD blockade. Tevis and Short stopped, and, at that point, an HCSD deputy drove his car to block the officers' path forward, and another HCSD officer pulled behind Tevis to block their retreat, surrounding Officers Tevis and Short. An HCSD deputy then approached Short's vehicle and, standing with his belt buckle to Short's driver's side window, ordered Short and Tevis to return to the Fort Hancock substation. The HCSD deputy further informed Short that he would be arrested if he failed to comply. Short contacted Sergeant Lopez via radio to inform him of his situation. Sergeant Lopez ordered Short to comply and not to resist.

Officers Tevis, Hicks, and Short were then escorted by the HCSD officers to the Fort Hancock substation, where they met Sergeant Lopez. Each officer drove his own vehicle and remained in possession of his service weapon. Sheriff West, arriving shortly thereafter, spoke with the officers for between twenty to thirty minutes. Specifically, West stated that he had not been notified of the task force's operation within his jurisdiction, and that he would receive future notice of any such activity. None of the task force officers were asked to produce identification, nor were they taken inside the Substation. Sheriff West concluded the meeting by stating that whatever the task force was working on "is fucked up now." He then informed the task force officers that they were free to leave.

Short thereupon sued Hudspeth County and Sheriff West under 42 U.S.C. § 1983 for violation of his rights under the Fourth Amendment. Both Hudspeth County and Sheriff West filed for summary judgment. The district court granted summary judgment for Hudspeth County, but not for West, finding that genuine disputes of material fact precluded a determination of the application of qualified immunity. In particular, the district court found genuine disputes existed as to West's knowledge of Short's status as an EPPD officer and Short's

No. 10-50992

authority to operate in Hudspeth County as part of the 34th Judicial District task force.

## JURISDICTION & STANDARD OF REVIEW

"A defendant in a § 1983 action can immediately appeal a district court's denial of a motion for summary judgment based on qualified immunity under the collateral order doctrine to the extent that the appeal turns on a question of law." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). "Where the district court has denied summary judgment on the ground that material issues of fact exist as to the plaintiff's claims, this court lacks jurisdiction to review the [district] court's determination that a genuine fact issue exists." *Id.* "This court can, however, review whether any factual dispute found by the district court is material for summary judgment purposes; that is, the court can consider the legal sufficiency of the facts that the district court found to be supported by the summary judgment record." *Id.* "Therefore, we do not apply the standard of Rule 56 but instead consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). "That is, we have jurisdiction only to decide whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts." *Id.* at 347.

"This court reviews *de novo* the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." *Freeman*, 483 F.3d at 410. "This court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity." *Id.* "First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Id.* "If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established

No. 10-50992

law at the time of the conduct in question." *Id*. at 411. "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id*. Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### ANALYSIS

Sheriff West appeals the district court's denial of summary judgment on the basis of qualified immunity. As noted above, the district court found genuine disputes of material fact precluded a determination of the applicability of qualified immunity.

To a large extent, Sheriff West's arguments challenge the district court's judgment that facts in the record create a genuine dispute as to whether Short was detained without reasonable suspicion and arrested without probable cause, and whether West acted reasonably in light of clearly established law. The district court reached that judgment after reviewing the evidence in the record, including circumstantial evidence, in the light most favorable to the non-moving party. So viewed, the district court found the record raised an inference that West knew Short was not impersonating a police officer, but was an authentic EPPD officer, and that Short had authority to operate in Hudspeth County as a member of the 34th Judicial District task force. The district court found the record supported an inference that West, despite this knowledge, ordered the arrest of Officer Short, as well as the other task force members. Sheriff West's argument that the evidence shows he merely requested to meet with the task force officers, and that he did not know of the task force's existence or the authenticity of the EPPD officers, clearly indicates a genuine dispute of material

6

fact, as the district court found, but does not show a legal error in the district court's judgment. Rather, Sheriff West seeks to challenge the sufficiency of the evidence to support the district court's finding, and this Court lacks jurisdiction to hear such an argument on interlocutory appeal. *See Juarez v. Aguilar*, --- F.3d ----, 2011 WL 4509529, at *4 (5th Cir. Sept. 30, 2011) (holding court lacked jurisdiction over defendant's argument that, contrary to district court's finding, evidence showed defendant did not make an adverse employment decision, defendant did not know of plaintiff's protected speech, and speech did not cause employment decision; finding arguments implicated factual disputes unreviewable on interlocutory appeal).

Putting aside West's factual disputes, his appeal raises few legal issues. Although this Court has jurisdiction to hear those issues, they are also unavailing.

First, Sheriff West argues that Short could not, as a matter of law, have been subject to seizure because (a) no physical contact was made with Short, (b) he drove his own vehicle to Fort Hancock, and (c) he retained his service weapon at all times. West's argument would, however, convert the required inquiry from one where "all of the circumstances surrounding the incident" are considered, *see United States v. Mendenhall*, 446 U.S. 544, 554 (1980), to one where one or two factors are determinative. The district court properly refused to do so. *See United States v. Chavez*, 281 F.3d 479, 484 (5th Cir. 2002) (cautioning, in Fourth Amendment analysis, "[n]o one factor is necessarily determinative"). Instead, the district court found that the record, when viewed as a whole and in the light most favorable to Short, supported a finding that Short was seized for Fourth Amendment purposes. In particular, the district court found the HCSD deputies' surrounding of the EPPD officers' vehicles, preventing either their continued path to I-10 or retreat, the menacing behavior and tone of the HCSD officer who approached Short's vehicle, and the threat of

arrest if Short did not comply constituted a sufficient show of force that a reasonable person in such a situation would not feel free to leave.[1]  We find no legal error in that analysis.  *See Mendenhall*, 446 U.S. at 554 (noting "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers . . . or the use of language or tone of voice indicating that compliance with the officer's request might be compelled").

Second, Sheriff West argues the district court erred in finding that, because of the genuine disputes of material fact, it could not determine whether Sheriff West's actions were objectively reasonable in light of clearly established law.  In particular, West argues that the district court erroneously engaged in a post hoc evaluation of his conduct in performing an investigatory detention, and that the district court improperly considered evidence of West's subjective motivations.

With regard to the district court's post hoc analysis, the district court appropriately analyzed "'whether [the investigative detention] was reasonably related in scope to the circumstances which justified the interference in the first place.'"  *See United States v. Sharpe*, 470 U.S. 675, 682 (1985) (applying two part analysis to determine reasonableness of investigative stop) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).  That analysis requires the court to "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."  *Id.* at 686.  Although courts are cautioned against "post hoc evaluations," *see id.*, such an examination inevitably requires an analysis of counterfactuals which will inform the court on the reasonableness of the detention.  Here, Sheriff West ordered the task force officers detained and

---

[1] Further, Sheriff West admitted Short was subjected to an investigatory stop.

No. 10-50992

brought to his office, and later Fort Hancock, so that he could personally examine them, actions which were not likely to "confirm or dispel [his] suspicions *quickly*." *See id.* (emphasis added). As the district court identified, there were various alternative means, such as contacting the EPPD Police Chief, whom Sheriff West knew, or running the plates of the vehicles, which were not merely "available," but were unreasonable to either not recognize or pursue as alternatives to seizing Short and escorting him to Fort Hancock. *See id.* at 687 ("The question is not simply whether some other alternative [to seizure] was available, but whether the police acted unreasonably in failing to recognize or pursue it."). Consequently, the district court was correct in finding Sheriff West's actions were not reasonably related in scope to investigatory detention.

With regard to Sheriff West's argument that the district court erred in relying on his subjective motivations in analyzing the objective reasonableness of his actions, we do not find the district court so improperly relied on evidence. Sheriff West's statement, at the close of his meeting with the officers, that their investigation "was fucked up now" could be evidence of a subjective intent to violate Short's Fourth Amendment rights, an intent irrelevant to determining whether West's actions were objectively unreasonable. *See Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998) (noting "[t]he subjective intent of the public official is irrelevant"). The statement is also evidence, however, that could indicate to a reasonable fact finder that West knew from the beginning that the task force officers, including Short, were authentic EPPD officers and not impersonators, and that they were operating lawfully in Hudspeth County. Such knowledge is "information then available to the defendant" necessary to consider in evaluating the objective reasonableness of the defendant's action. *Freeman*, 483 F.3d at 411. We understand the district court's order as utilizing the evidence to support such a relevant inference. Consequently, the district

No. 10-50992

court appropriately relied on the evidence of West's statement in refusing to find West's actions were objectively reasonable.

Accordingly, West fails to show legal error in the district court's analysis.

## CONCLUSION

For the reasons stated above, the appeal is DISMISSED in part, and the order of the district court is AFFIRMED in part.