# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30630

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2016

Lyle W. Cayce
Clerk

CARY KING; MELBA IRELAND KING,

Plaintiffs - Appellees

v.

LLOYD G. HANDORF,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, SOUTHWICK, and COSTA, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Cary and Melba King own two properties in LaSalle Parish, Louisiana. After the Kings challenged a substantial increase in the taxes on these parcels, the Parish sent two tax assessors to inspect the property. The Kings claim the inspection was conducted in a manner that violated their constitutional rights. We conclude the defendant inspector, Lloyd Handorf, is entitled to qualified immunity. We therefore REVERSE and RENDER.

## FACTUAL AND PROCEDURAL BACKGROUND

Cary and Melba King own two properties in LaSalle Parish, Louisiana, that include residential homes, a chicken farm, an office, a workshop, and a

pool house. Apparently, the properties are across a road from each other. In 2010, the Kings were notified that their properties were subject to a 59% and 44% *ad valorem* tax increase due to a reassessment by the LaSalle Parish Tax Assessor's Office. The Kings appealed to the Board of Review for Tax Assessments, which reduced the increases. Aron Johnson, the LaSalle Parish Tax Assessor, appealed that decision to the Tax Commission, which then reinstated the initial increase.

After the Board of Review reduced the increase but before the Tax Commission reinstated it, the Tax Commission sent two of its employees, Bill Johnson and Lloyd Handorf, to the Kings' properties. Melba knew the Commission would be sending appraisers. Sometime in late 2011, Handorf and Johnson appeared at the Kings' properties.[1] They knocked on the door to the office on one of the properties. Melba answered and the assessors identified themselves as employees from the Tax Commission there to do an appraisal. Melba offered to accompany them on a tour of her property, but they declined her offer. She placed no limits on their access, and, as she testified in a deposition, "offered to go with them, to walk with them."

During the appraisal, the assessors walked around the property and viewed or measured several items, including a workshop that Melba argues was not under the tax protest. Melba also requested that the assessors evaluate several items, such as two breakages in the wall to her house. Melba testified the appraisal took approximately one hour. The appraisers never entered the Kings' house. Toward the end of the appraisal, Melba claims she saw Handorf "put[] his hands to either side of his face," as if cupping his eyes to shield them from light, and peer into the bathroom and kitchen of her house

---

[1] Melba testified that Handorf had inspected and appraised her property before. There is no evidence or allegation of any misconduct in these prior appraisals.

2

through the glass. Melba did not like the visual intrusion, saw also that the appraisers were measuring the workshop, and decided to order them to leave. After a brief argument, the assessors left. Thereafter, Melba noticed the door to the pool house was ajar. She inferred the assessors must have opened the door because the door is usually closed.

The Kings filed suit in Louisiana state court against defendants Aron Johnson, Jimmy Dean (the previous LaSalle Parish Tax Assessor), the Tax Commission, and Lloyd Handorf.[2] The Kings claimed violations of their state and federal constitutional rights, including their Fourth Amendment rights. The defendants removed to federal district court and filed for summary judgment, raising qualified immunity as an affirmative defense for Handorf. After supplemental briefing, the district court determined that Handorf was not entitled to qualified immunity because he had exceeded the scope of his consent and therefore violated the Kings' Fourth Amendment rights. The district court denied him summary judgment. Handorf appeals.

## DISCUSSION

### I. Jurisdiction

Under 28 U.S.C. § 1291, we have jurisdiction to review "final decisions of the district courts." Denials of summary judgment are ordinarily not final decisions that can be reviewed. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004). Even so, Section 1291 jurisdiction exists over appeals from denials of qualified immunity based on pure questions of law. *Id.* The district court denied Handorf qualified immunity because it determined there was evidence

---

[2] The Kings claim there was political retribution behind this incident. Melba ran and lost against Dean, the former LaSalle Parish Tax Assessor, for that office. Johnson, the current Tax Assessor, was openly endorsed by Dean when Johnson ran to succeed Dean. Melba opposed Dean, but also opposed Johnson. Melba alleges her property taxes were increased as a result of political retribution exacted by Dean and Johnson.

No. 15-30630

he violated the Fourth Amendment. While there is a factual dispute as to whether Handorf opened the pool house door, the district court assumed Handorf had done so for purposes of the summary judgment motion. We have before us the issue of whether the district court made a legal error in denying qualified immunity. We therefore "can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Johnson v. Jones*, 515 U.S. 304, 319 (1995). We also have jurisdiction over the legal issues of whether factual disputes are material. *See Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011). We give *de novo* review to the legal issues relating to qualified immunity. *Id.*

### II. Qualified Immunity

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). It is an affirmative defense; once properly raised by the defendant, the "plaintiff has the burden to negate the assertion of qualified immunity." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To establish that qualified immunity does not apply, the Kings must prove Handorf "[(1)] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan*, 659 F.3d at 371. "Courts of appeal are free to decide which of the two prongs of the qualified immunity analysis to address first. . . . The second prong is satisfied only if 'the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (citations omitted) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

Summary judgment should be awarded "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "'A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof', shifting it to the plaintiff to show that the defense is not available." *Cass*, 814 F.3d at 728 (quoting *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

The district court determined Handorf failed both prongs, that is, he violated the Kings' Fourth Amendment rights and these rights were clearly established at the time the appraisal occurred. Specifically, the district court determined that while Handorf had consent to conduct a tax appraisal, he exceeded this consent by: (1) being on the curtilage; (2) peering into the windows; and (3) opening the pool house door.

It is true that "the Fourth Amendment protects the curtilage of a house." *United States v. Dunn*, 480 U.S. 294, 300 (1987). Therefore, an intrusion by government officials into a house or its curtilage may be a Fourth Amendment search.[3] *Florida v. Jardines*, 133 S. Ct. 1409, 1414−15 (2013). Certainly, Handorf entered the property and curtilage. Consent, however, would render

---

[3] Handorf argues that if any "search" occurred in this case, it was an "administrative" search. The Kings do not dispute this characterization. The precise contours of an administrative search are unclear. *See* Eve Brensike Primus, *Disentangling Administrative Searches*, 111 COLUM. L. REV. 254, 312 n.15 (2011) (noting different definitions on what constitutes an administrative search). Because our resolution of this case does not depend on this categorization, we need not address it further.

Handorf's alleged search reasonable under the Fourth Amendment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973). Consent can be given implicitly through a person's actions. *See United States v. Scroggins*, 599 F.3d 433, 441−43 (5th Cir. 2010). Finally, the "standard for measuring the scope of . . . consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between" the individuals? *Florida v. Jimeno*, 500 U.S. 248, 250−51 (1991).

It is uncontroverted that Melba consented to an appraisal. Therefore, as the district determined, Handorf had the consent to take actions consistent with that of a tax appraisal. The principal Fourth Amendment question in this case is whether Handorf exceeded the scope of the consent when conducting the appraisal, and whether those actions constituted an unreasonable search. To resolve this question, we must determine what the scope of permissible action is in a tax appraisal.

There is no guidance within our circuit regarding the actions a tax appraiser may take in an assessment. Further, other than conclusory allegations, the Kings have not identified the proper course of conduct for a tax appraiser. Three cases from our sister circuits, however, support that Handorf's actions did not constitute a search under the Fourth Amendment.

In one case, the Sixth Circuit held that a tax assessor who intruded onto the curtilage of a home had not conducted a search. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585−86 (6th Cir. 2005). There, the assessor walked onto the property, passed "no trespassing" signs, then intruded on the curtilage while conducting a consent-less assessment. *Id*. at 581−82. The Sixth Circuit, while recognizing the intrusion on the curtilage was ill-advised, nonetheless determined it was not a search because the assessor relied on "naked-eye observations unaided by technological enhancements," "did not touch, enter, or look into the house," was there solely for a tax assessment and not for any

6

"dirty business," and undertook an "administrative [instead of a criminal] investigation." *Id.* at 581−86. Consequently, the assessor's actions were not "unduly intrusive," even though he entered onto the curtilage, in light of the reasons he was there for and the methods used in his investigation. *Id.* at 585.

The only difference in the actions Handorf took in comparison to the assessor in *Widgren* is that Handorf allegedly looked inside the home and opened the pool house door. There is no indication, though, that Handorf was on the property for improper reasons that had no nexus to his legitimate administrative goals. Indeed, Handorf had consent to be on the property, unlike the assessor in *Widgren*.

In another case, the Sixth Circuit again held that no search took place. *Taylor v. Mich. Dep't of Nat. Res.*, 502 F.3d 452 (6th Cir. 2007). In *Taylor*, a conservation officer saw tracks leading up to a house and was concerned there might be a trespasser. *Id.* at 454. He went up to the house, which was unoccupied, passed two "No Trespassing" signs, "peered into the windows of the home and garage, shielding his eyes from the daytime sun with cupped hands, and . . . rattled the doorknobs of the home and garage." *Id.* The Sixth Circuit again found it relevant that the officer used "limited methods of observation" and that "the purpose of his conduct . . . [was] protective" instead of "investigat[ing] suspected wrongdoing." *Id.* at 456−57. If an officer can enter the curtilage, rattle door knobs, and peer inside a home, without the consent of the homeowners, and his actions still do not constitute a Fourth Amendment search, then it is likely that Handorf's actions here do not constitute a search either.

Finally, we examine a decision from the Fourth Circuit where a search was deemed to have occurred. *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186 (4th Cir. 2015). There, a West Virginia tax assessor went to a home despite that no-trespassing signs were posted and the owners were absent; he found

marijuana and reported the drugs to police. *Id.* at 190. While the homeowners in *Widgren* and *Taylor* also posted signs that were ignored by the officials, those decisions did not discuss law comparable to that in West Virginia, which provides that an assessor cannot ignore no-trespassing signs. *Id.* at 194−95. Moreover, the assessor in *Covey* physically entered the home. *Id.* at 195.

In the present case, Handorf is entitled to qualified immunity unless it was clearly established that what he did was a violation of the Kings' Fourth Amendment rights. *Morgan*, 659 F.3d at 371. The opinions we have just reviewed, which are the most relevant discussions of the law in this area, reveal no clear violations of the Kings' rights. *See Aschroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (explaining that in the absence of binding authority, a right should be deemed clearly established only if that is demonstrated by a "robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999))). Handorf is entitled to qualified immunity. REVERSED and RENDERED.