**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00197-CV**
_____

**TYRONE HADLEY, Appellant**

**V.**

**KEITH MIHAIL BILLIRIS AND MONTGOMERY COUNTY, TEXAS,
Appellees**

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 19-10-13886-CV

## MEMORANDUM OPINION

In two issues on appeal, appellant Tyrone Hadley complains the trial court erred by dismissing his state law claims against appellee Keith Mihail Billiris under section 101.106(f) of the Texas Civil Practice and Remedies Code and in granting summary judgment to Billiris on his federal claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). We affirm the trial court's judgments.

1

BACKGROUND

Hadley filed suit against Billiris, Home Depot, Christopher Bodine and Montgomery County, alleging various state and federal causes of action stemming from Bodine, Home Depot's loss prevention officer, accusing him of shoplifting and from Billiris striking him with a county owned vehicle while placing him in the custody of Montgomery County.[1] Hadley sued Billiris in his individual capacity and as an agent of Montgomery County and alleged that Billiris "was at all times relevant to this action acting under the color of law." Hadley alleged that he ran from Billiris because he had an outstanding warrant and that he was severely injured when Billiris struck him with his vehicle. Hadley alleged that Billiris violated his state and federal constitutional rights when he used unreasonable and excessive deadly force without justification to allegedly strike and pin Hadley down with his vehicle. Hadley also complained that Billiris violated his rights by subjecting him to an illegal search and seizure, wrongful incarceration and denying him equal protection. *See* U.S. CONST. amends. IV, XIV; Tex. Const. art. I, § 19; 42 U.S.C § 1983. In addition to his constitutional claims, Hadley also alleged a cause of action against Billiris for intentional infliction of emotional distress. Montgomery County and Billiris entered a general denial and pled, among others, the affirmative defense of governmental

_____

[1]Home Depot, Christopher Bodine, and Montgomery County are not parties in this appeal.

2

immunity, including limitations of damages and election of remedies under the Texas Tort Claims Act ("TTCA").

Billiris filed a Motion to Dismiss Pursuant to Election of Remedies under the TTCA, arguing that section 101.106(f) bars suit against officers acting in their official capacity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Billiris argued a government employee is entitled to dismissal under the TTCA upon proof that the plaintiff's suit is (1) based on conduct withing the scope of the defendant's employment with a governmental unit; and (2) could have been brought against the governmental unit under the TTCA. *See id.* Billiris argued that Hadley's state law tort claims, including the intentional tort, could have been brought against Montgomery County under the TTCA. *See Franka v. Velasquez*, 332 S.W.3d 367, 369, 385 (Tex. 2011). According to Billiris, all the acts Hadley complained about occurred while Billiris was acting within the scope of his employment and in his official capacity as a Montgomery County Sherriff's Deputy. The trial court granted Billiris's Motion to Dismiss all state law claims against him, finding that Billiris was acting within the scope of his employment at all relevant times and that the alleged conduct is based on conduct within the scope of Billiris's employment with a governmental unit and could have been brought against the governmental unit under the TTCA.

3

Billiris filed a Motion for Summary Judgment, arguing that he was entitled to qualified immunity from Hadley's remaining Civil Rights claims. Billiris argued there was no evidence that clearly established law putting him on notice that it was unconstitutional to use his vehicle to pursue a known felon who had no regard for human life. According to Billiris, this case does not demonstrate a clearly unconstitutional use of force, and there is no evidence that Billiris intentionally struck Hadley with his vehicle. Billiris also argued that he was entitled to a traditional motion for summary judgment because: (1) a reasonable officer could have believed that Hadley committed theft and felony evading; (2) Hadley's conviction for attempting to flee establishes probable cause as a matter of law; (3) the grand jury cut off his liability under the Third Party Intermediary Doctrine; and (4) a reasonable officer in his position could have believed that it was reasonable to pursue Hadley with his vehicle. Billiris's summary judgment evidence includes call notes regarding the Home Depot theft and Hadley evading arrest; the video from his dash camera; Hadley's open fugitive warrant; Hadley's evading arrest conviction; Hadley's theft dismissal and plea deal; Bodine's statement regarding Hadley's theft from Home Depot; and Hadley's indictment for evading arrest or detention with a vehicle.

Hadley filed a response to Billiris's Summary Judgment Motions and argued that Billiris was not entitled to qualified immunity because Billiris violated Hadley's

4

constitutional right to be free from unreasonable force during his arrest when Billiris used excessive force and intentionally used his patrol car to strike Hadley. According to Hadley, a reasonable officer would have known that it would be an unreasonable violation of a person's rights to hit that person with a vehicle when they pose no immediate threat to the officer or others. Hadley argued that his risk of potential escape did not justify Billiris's use of deadly excessive force to prevent him from fleeing. Hadley also argued that Billiris did not have probable cause to believe that he posed a threat of serious physical harm because he never made any threatening movements toward Billiris or any others that would justify Billiris's use of deadly force. Hadley made relevance and hearsay objections to Billiris's summary judgment evidence. Hadley's summary judgment evidence includes his unsworn declaration, Billiris's dash cam video, and Billiris's deposition.

Billiris filed a reply to Hadley's response, responding to Hadley's objections to his summary judgment evidence and objecting to Hadley's evidence. Billiris objected to Hadley's declaration and argued that it was so contrary to the video evidence that it does not create a material fact issue. Billiris also objected that the copy of the video deposition was non-authenticated and non-certified. Billiris argued that he was entitled to qualified immunity because Hadley failed to cite any evidence showing that he intentionally struck Hadley, point to any clearly established law prohibiting an officer from chasing a fleeing felon with his patrol car, or show that

5

a reasonable officer in Billiris's position would have known it was a violation of clearly established law to pursue a fleeing felon headed towards innocent bystanders with a vehicle.

Initially, the trial court denied Billiris's Motions for Summary Judgment, finding there exists some evidence presenting genuine issues of material fact as to whether Billiris intended to strike Hadley with his patrol car and, if so, whether that force was excessive. However, the trial court vacated that order and granted Billiris's Traditional and No Evidence Motions for Summary Judgment based on the authority of *Mullenix v. Luna*, 577 U.S. 7, 18 (2015), explaining that factual questions do not dictate against summary judgment in this context because "qualified immunity protects actions in the 'hazy border between excessive and acceptable force.'"

ANALYSIS

In issue one, Hadley complains the trial court erred by dismissing his claim for intentional infliction of emotion distress because (1) Billiris did not establish the second element for dismissal under section 101.106(f) because he was sued in his individual capacity and did not plead official immunity or properly raise governmental immunity, and (2) the election of remedies statute does not apply to intentional torts. According to Hadley, Billiris failed to prove Hadley's claim for intentional infliction of emotional distress could have been brought against Montgomery County as required under section 101.106(f).

6

Sovereign and governmental immunity exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Governmental immunity protects various political subdivisions, including counties. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Without an express waiver of sovereign or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its political subdivisions. *See State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-25 (Tex. 2004).

The TTCA provides a limited waiver of immunity and has an election-of-remedies provision that is intended to force a plaintiff at the outset of his suit to determine whether to sue a responsible employee of a governmental unit in his individual capacity because he is solely liable, or to sue a governmental unit because the employee acted within the scope of his employment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106; *Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019); *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017). If a plaintiff only sues a public employee in that employee's official capacity for conduct within the scope of employment, the employee can force the plaintiff to dismiss his suit against the employee and to file an amended petition against the governmental unit, because an

official-capacity suit against an employee is merely another way of pleading a cause of action against a governmental employer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *Garza*, 574 S.W.3d at 399. Section 101.106(f) states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). To be entitled to a dismissal under 101.106(f), the defendant employee must establish (1) he is an employee of a governmental unit, (2) the plaintiff's suit was based on conduct within the scope of defendant's employment with a governmental unit, and (3) the suit could have been brought against the governmental unit under the TTCA. *See id.*; *Laverie*, 517 S.W.3d at 752. We review a trial court's ruling on a motion to dismiss under section 101.106(f) de novo. *Garza*, 574 S.W.3d at 400.

The record shows that Billiris pled the affirmative defense of governmental immunity, including the election of remedies under the TTCA, and in his Motion to Dismiss Pursuant to Election of Remedies, Billiris argued section 101.106(f) barred Hadley's claim because he was acting in his official capacity. The record also shows that Hadley did not file a response to Billiris's Motion to Dismiss Pursuant to

8

Election of Remedies or complain to the trial court that Billiris failed to establish dismissal under section 101.106(f) because he was sued in his individual capacity and did not plead official immunity. We hold that since Hadley failed to make this complaint in the trial court, he failed to preserve his argument for our review. *See* Tex. R. App. P. 33.1(a); *Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 470 (Tex. App.—Fort Worth 1997, writ denied) (op. on reh'g).

Hadley also complains that Billiris failed to prove his claim for intentional infliction of emotional distress could have been brought against Montgomery County as required under section 101.106(f). The record shows that Hadley pled a claim of intentional infliction of emotional distress and sought damages from Billiris for conduct that occurred while he was acting within the scope of his employment with Montgomery County. Hadley's tort claim "could have been brought" under the TTCA against Montgomery County even though it does not fall within TTCA's waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *Franka*, 332 S.W.3d at 369, 375-85 (explaining that any tort claim against the government is brought under TTCA for purposes of section 101.106, even if the tort claim does not fall within TTCA's limited waiver of immunity); *Garcia*, 253 S.W.3d at 659 (providing that because the TTCA is the only avenue for common-law recovery against the government, all tort theories alleged against a governmental unit are assumed to be under the TTCA). Section 101.106 "'bars any action[,]'" including

9

an intentional tort. *Newman v. Obersteller*, 960 S.W.2d 621, 622–23 (Tex. 1997); *see Liu v. City of San Antonio*, 88 S.W.3d 737, 744 (Tex. App.—San Antonio 2002, pet. denied); *Abron v. Obioha*, No. 09-20-00126-CV, 2021 WL 5113811, at \*3 (Tex. App.—Beaumont Nov. 4, 2021, no pet.) (mem. op.).

We conclude that Billiris established that Hadley's claim for intentional infliction of emotional distress could have been brought against Montgomery County under the TTCA and that section 101.106(f) does not require Billiris to establish a waiver of the government's immunity to obtain a dismissal. We further conclude since Billiris showed that he was entitled to a dismissal under 101.106(f), the trial court did not err by dismissing Hadley's claim for intentional infliction of emotion distress. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *Garza*, 574 S.W.3d at 399; *Laverie*, 517 S.W.3d at 752. We overrule issue one.

In issue two, Hadley argues the trial court erred in granting Billiris's traditional and no-evidence motions for summary judgment because (1) Billiris never pleaded qualified immunity, (2) the trial court viewed the summary judgment evidence in the light most favorable to Billiris, and (3) *Mullenix* does not apply. *See Mullenix*, 577 U.S. at 18.

We review rulings on motions for summary judgment using a de novo standard. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In resolving Hadley's issue, we need not consider the ruling on the no-

evidence part of Billiris's hybrid motions for summary judgment before considering the ruling on the traditional portion of Billiris's motion because a no-evidence motion for summary judgment is not the appropriate procedural vehicle for establishing an affirmative defense of qualified immunity. *See Haver v. Coats*, 491 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A party moving for traditional summary judgment and asserting an affirmative defense has the burden of pleading and proving the defense as a matter of law such that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Haver*, 491 S.W.3d at 883; *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *see also* Tex. R. Civ. P. 94. If the defendant establishes a right to summary judgment, the burden shifts to the plaintiff to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We must view all evidence and reasonable inferences in the light most favorable to the nonmovant. *Thomas v. Omar Invs., Inc.*, 129 S.W.3d 290, 293 (Tex. App.—Dallas 2004, no pet.). Summary judgment will be affirmed only if the record shows that the defendant conclusively proved all elements of the affirmative defense as a matter of law. *Id.*

While Hadley complains the trial court erred by granting summary judgment in Billiris's favor because Billiris never pleaded qualified immunity, the record shows that Hadley failed to make this complaint in the trial court. Instead, Hadley

11

filed a response to Billiris's Summary Judgment Motions and argued that Billiris was not entitled to qualified immunity. We hold that since Hadley failed to make this argument in the trial court, he waived it on appeal. *See* Tex. R. App. P. 33.1(a); *Courtney*, 946 S.W.2d at 470. Additionally, we hold that because Hadley failed to object and argued the issue of qualified immunity in his summary judgment response, the issue was tried by consent. *See* Tex. R. Civ. P. 67; *Alcorn v. Vaksman*, 877 S.W.2d 390, 406 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Hadley also argues the trial court erred by granting summary judgment because it viewed the summary judgment evidence in the light most favorable to Billiris. According to Hadley, his presentation of the dash cam video shows that his acts did not pose a threat to Billiris or others and presents a fact issue for the jury to decide. In resolving questions of qualified immunity, we must first determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right, and if a violation occurred, we next determine whether the right was clearly established in light of the specific context of the case. *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citation omitted). Thus, we first determine whether Billiris's actions violated the Fourth Amendment, and that inquiry involves the determination of relevant facts, which usually means adopting the plaintiff's version of the facts. *Id.* at 378. However, in this case there is a dash cam video capturing the events leading to Billiris's

12

apprehension of Hadley, and that video, which has not been alleged to have been altered in any way, clearly contradicts Hadley's version of the incident. *See id.* at 378-79. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

In his summary judgment response, Hadley asserted that the undisputed facts show he was unarmed and posed no immediate threat of harm to Billiris or others when he crashed into a pole and exited his vehicle, and Billiris struck him with his patrol car and pinned him with the wheel of his vehicle while seeking to place Hadley in custody. Hadley argued the disputed facts included whether he was a convicted felon, he ran into Billiris's vehicle, and Billiris intentionally struck him with his vehicle. Hadley further argued that he never made any threatening movements toward Billiris or others.

The video shows that Billiris approached Hadley in the Home Depot parking lot and asked Hadley to put his hands on his vehicle, and Hadley fled in his vehicle. The video shows Hadley driving in a dangerous manner, using the inside turning lane and outside shoulder to pass numerous cars and swerving into oncoming traffic. The video also shows Hadley driving on the outside shoulder and when he encountered a bicyclist, he returned to his lane of traffic. The video shows Hadley

13

speeding through a school zone, swerving into oncoming traffic, crashing his vehicle, and fleeing on foot towards a wooded area, but then Hadley turns to the left and runs back toward the roadway where there are two pedestrians. The video does not capture Billiris striking Hadley with the front of his patrol car, and it appears that the impact occurred on the left side of the patrol car after Hadley turned directions. Billiris stated that he thought Hadley got caught under his tire when he got close to Hadley and told him to stop. Since the video contradicts Hadley's version of the events and shows that Hadley was driving in a manner that placed police officers and innocent bystanders at great risk of serious injury, we hold that the trial court was correct to view the facts in the light depicted by the video. *See id.* at 380; *Klassen v. Gaines Cty.*, 2021 WL 2964423, at *4 (Tex. App.—Eastland July 15, 2021, no pet.) (mem. op.).

Hadley also complains the trial court erred by granting summary judgment based on the authority of *Mullenix* because unlike the fugitive in *Mullinex*, Hadley did not threaten or pose a threat of harm to Billiris or others. *See Mullenix*, 577 U.S. at 18. In *Mullenix*, the Supreme Court held that qualified immunity protects actions in the hazy border between excessive and acceptable force and noted that it had "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." *Id.* at 14–15 (citations omitted); *see Scott*, 550 U.S. at 384 (holding

14

officer did not violate Fourth Amendment by ramming fugitive's car when fugitive's reckless driving posed an actual and immediate threat to lives of pedestrians who may have been present, other motorists and officers involved in the chase).

Although Hadley argues that he presented evidence supporting genuine issues of material fact proving Billiris intended to strike him with his patrol car, that the force was excessive, and that Billiris and others were not in danger, the video contradicts Hadley's version of the events. Hadley further argues that ample case law shows that use of excessive force against a suspect under the conditions here was a violation of clearly established law. According to Hadley, a genuine issue of material fact exists to show Billiris violated his Fourth Amendment right to be free from seizure by excessive force and this right was clearly established when Billiris struck Hadley with his patrol car. Hadley complains that the trial court did not address whether Billiris's conduct violated his federal right under the Fourth Amendment to be free from unreasonable use of force during his arrest, and a reasonable officer would know that hitting a person with a vehicle who poses no immediate threat to the officer or others would be unreasonable and a violation of that person's rights.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a 'citizen's rights, privileges, or immunities secured by the Constitution and laws' of the United States[.]" *Livadas v. Bradshaw*, 512 U.S. 107,

132 (1994); *see* 42 U.S.C.A. § 1983. "To establish an entitlement to qualified immunity, a government official must show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority." *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004). In this case, the parties do not dispute that Billiris acted in his official capacity and within the scope of his discretionary authority when arresting Hadley.

"[O]fficers are entitled to qualified immunity under [42 U.S.C.] § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 556 U.S. 658, 664 (2012)). Qualified immunity gives government officials room to make reasonable but mistaken judgments, and it protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted). In general, "'[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof,' shifting it to the plaintiff to show that the defense is not available." *Valencia v. Davis*, 836 F. App'x 292, 297 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). To rebut the defense of qualified immunity, the plaintiff must establish "that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.*

16

(quoting *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016)). Since we have discretion in deciding which of the two prongs of the qualified immunity analysis to address first, we choose to address step two, which requires the plaintiff to find a case in his favor that does not define the law at a high level of generality. *See id.* (citations omitted). "Clearly established law is determined by 'controlling authority– or a robust consensus of persuasive authority–that defines the contours of the right in question with a high degree of particularity.'" *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018) (citation omitted). A plaintiff's burden is not met by broadly stating that citizens are protected against unjustified, excessive force or that an unreasonable search and seizure violates the Fourth Amendment. *See Valencia*, 836 F. App'x at 297 (citations omitted); *see also Ashcroft*, 563 U.S. at 742.

In his summary judgment response, Hadley argued the Fourth Amendment provides him with the right to be free of unreasonable searches and seizures, he had a constitutional right to be free from unreasonable use of force during his arrest, and it is constitutionally unreasonable to use deadly force to prevent the escape of a felony suspect who poses no immediate threat of serious physical harm to the officer or others. However, the cases that Hadley cited in support of his arguments are easily distinguishable and do not clearly establish a Fourth Amendment violation in this case. *See Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020, 2021–22 (2014) (holding that officer was reasonable in using deadly force by shooting defendant who had led

17

police on high speed chase and continued to pose a deadly threat for others on the road); *Graham v. Connor*, 490 U.S. 386, 389–90, 394, 396–97 (1989) (reversing district's court directed verdict finding that officer's use of force during an investigatory stop consisting of rolling defendant on the sidewalk, cuffing his hands tightly behind his back and refusing his request for his sugar diabetes was appropriate under the circumstances); *Tennessee v. Garner*, 471 U.S. 1, 11, 20–21 (1985) (holding that facts did not justify the use of deadly force and shooting defendant where officer could not have reasonably believed that defendant, who was unarmed, posed any physical danger to himself or others); *Escobar v. Harris Cty.*, 442 S.W.3d 621, 637-38 (Tex. 2014) (concluding that summary judgment was inappropriate on the record because there was sufficient evidence to establish a genuine issue of material fact–whether defendant appeared to reach in his pants for a weapon). Nor is this an "obvious case" of excessive force such that the *Graham* factors can establish a violation even without a body of relevant case law. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

Absent any authority clearly indicating that the facts here are unlawful, Hadley failed to rebut the second prong of the qualified immunity test. *See Valencia*, 836 F. App'x at 297–99; *Klassen*, 2021 WL 2964423, at \*5. Accordingly, we hold that the trial court did not err in dismissing Hadley's federal civil rights claims against Billiris. *See Klassen*, 2021 WL 2964423, at \*5. We further conclude that the

trial court did not err in granting Billiris's traditional motion for summary judgment because Billiris proved all elements of the affirmative defense of qualified immunity as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Haver*, 491 S.W.3d at 883; *Thomas*, 129 S.W.3d at 293; *see also* Tex. R. Civ. P. 94. We overrule issue two. Having overruled both of Hadley's issues, we affirm the trial court's orders dismissing Hadley's state law claims and granting summary judgment to Billiris on his federal claims.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on October 14, 2021
Opinion Delivered July 14, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.