# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20541

———————

Deana Pollard Sacks,

*Plaintiff—Appellant*,

*versus*

Texas Southern University; Ahunanya Anga; James Douglas; Fernando Colon-Navarro; Ana Otero; April Walker; Darnell Weeden,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-299

———————————————————————

Before King, Willett, and Douglas, *Circuit Judges*.

Per Curiam:

Deana Pollard Sacks resigned from her tenured professorship at the Thurgood Marshall School of Law at Texas Southern University (TSU) in August 2020. She then sued TSU and several TSU employees for Title VII constructive discharge, Equal Pay Act (EPA) retaliation, and civil rights violations under 42 U.S.C. § 1983. The district court dismissed all her claims, holding that res judicata barred her § 1983 claims and that she failed to state Title VII and EPA claims. We AFFIRM.

No. 22-20541

I

We start at the beginning. In 2018, while Sacks was still teaching at TSU, she filed her first suit against TSU and its employees (*Sacks I*). Sacks sued TSU for (1) Title VII hostile work environment, (2) Title VII retaliation, (3) EPA violation, and (4) § 1983 civil rights violations. She also sued Ahunanya Anga, James Douglas, Fernando Colon-Navarro, Ana Otero, and April Walker, all TSU employees, for (1) § 1983 civil rights violations and (2) invasion of privacy.

Sacks lost on all claims. The district court dismissed all of Sacks's claims except her (1) Title VII race-based hostile work environment claim, (2) EPA claim, and (3) § 1983 civil rights claim against Douglas. The Title VII and § 1983 claims were later dismissed on summary judgment. The EPA claim continued to trial, where the jury found for TSU.

In August 2020, while *Sacks I* was ongoing, Sacks resigned from TSU. A month later, she moved for leave to amend her complaint in *Sacks I* to add several claims and defendants, including a Title VII constructive discharge claim against TSU. The district court denied her motion.

Sacks then filed a second suit against TSU and TSU employees, *this* case, now before us on appeal (*Sacks II*). Against TSU, she claims (1) Title VII constructive discharge, (2) EPA retaliation, and (3) breach of contract. Against the same individual defendants from *Sacks I*, plus current Thurgood Marshall School of Law professor Darnell Weeden (the Individual Defendants), Sacks claims (1) EPA retaliation and (2) § 1983 violations. TSU and the Individual Defendants moved to dismiss all claims, arguing that Sacks's claims were barred by res judicata—that is, claim preclusion—and that she failed to state a claim. Alternatively, they argued that these claims should be consolidated with *Sacks I*. The district court denied the motion to consolidate.

2

No. 22-20541

The district court held that res judicata did not bar Sacks's Title VII constructive discharge claim or her EPA claim. But, looking to conduct after August 29, 2019—which the parties agree was the last day to amend pleadings in *Sacks I*—the court held that Sacks did not state Title VII and EPA claims. The district court held that Sacks's § 1983 and breach of contract claims were barred by res judicata and that she also failed to state a claim.

Sacks timely appealed the district court's dismissal of all claims except breach of contract. We first address whether Sacks's claims are barred by res judicata and then, if they are not, whether Sacks states a claim.

II

"The res judicata effect of [the *Sacks I*] judgment is a question of law that we review de novo." *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (italics omitted). Res judicata is an affirmative defense. Fed. R. Civ. P. 8(c)(1). So Defendants bear the burden to plead and prove it. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). Dismissal under Rule 12(b)(6) for res judicata can be appropriate when the elements of res judicata "appear[] on the face of the pleadings." *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

"We review de novo the district court's dismissal for failure to state a claim under Rule 12(b)(6)." *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). We may affirm dismissal on any ground that the record supports. *See In re S. Recycling, L.L.C.*, 982 F.3d 374, 382 (5th Cir. 2020).

III

"[R]es judicata[] bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). True res judicata—

3

also called claim preclusion—applies only if "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.*

We apply the transactional test to determine whether both suits involve the same claim or cause of action. *Id.* Under this test, res judicata bars litigation of "all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id.* To determine whether facts constitute a "transaction" or "series of transactions," we consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* So, "[t]he critical issue is whether the two actions are based on the 'same nucleus of operative facts.'" *Id.* (quoting *New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000)).

"'[S]ubsequent wrongs' by a defendant constitute new causes of action" not barred by res judicata when those wrongs "occurred either after the plaintiffs had filed their prior lawsuit or after the district court had entered judgment in the prior lawsuit." *Davis*, 383 F.3d at 314. Simply, res judicata does not "extinguish[] claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).

A

We start with Sacks's Title VII constructive discharge claim against TSU. At issue is whether *Sacks I* involved the same claim. *See Test Masters*, 428 F.3d at 571. We agree with the district court that it does not.

To state a claim for constructive discharge, the former employee must show (1) "that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and (2) "that he actually resigned." *Green v. Brennan*, 578 U.S. 547, 555 (2016). "In other words, an employee cannot bring a constructive-discharge claim until he is constructively *discharged*." *Id.*

Accordingly, Sacks could not bring a constructive discharge claim until she resigned in August 2020. Her claim thus did not exist until well after August 29, 2019, which the parties agree is the last day that Sacks could amend her pleadings in *Sacks I. See Lawlor*, 349 U.S. at 328. Sacks nonetheless moved to amend her complaint in *Sacks I* to add her constructive discharge claim. The district court denied her motion. Sacks therefore could not have brought her constructive discharge claim in *Sacks I*. We simply cannot treat the *Sacks I* judgment as extinguishing a claim that did not exist until well into *Sacks I* and that Sacks was not permitted to bring in that case. *See id.*; *see also Davis*, 383 F.3d at 314 ("*Res judicata* 'bars all claims that were or *could have been* advanced . . . [in the earlier action].'" (quoting *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983))); *Anderson v. Hous. Cmty. Coll. Sys.*, 90 F. Supp. 3d 667, 672 (S.D. Tex. 2015) (citing *Suter v. Univ. of Tex. at San Antonio*, No. SA-12-CV-969-OLG, 2013 WL 6919760 (W.D. Tex. Dec. 20, 2013)).

Therefore, Sacks's resignation, which she alleges was a constructive discharge, is a "subsequent wrong" by TSU. *See Davis*, 383 F.3d at 314. It is thus a new claim that survives res judicata.

Sacks argues that the district court gave de facto res judicata effect to *Sacks I* by holding that Sacks could look only to post–*Sacks I* conduct. We agree. Having decided that Sacks could not have brought a constructive discharge claim in *Sacks I*, we cannot now truncate that claim merely because some underlying facts overlap with facts in *Sacks I*. Res judicata bars relitigation of "claim[s] or cause[s] of action," not individual facts. *Test Masters*, 428 F.3d at 571.

Thus, we hold that res judicata does not bar Sacks's Title VII constructive discharge claim and that Sacks can look to conduct before and during *Sacks I*.

B

Next, we turn to Sacks's EPA retaliation claims against TSU and the Individual Defendants. The first and fourth res judicata factors are in play: whether the *Sacks I* and *II* parties are identical or in privity and whether *Sacks I* involved the same claim. *See id.*

Because Weeden was not a party in *Sacks I*, res judicata bars Sacks's claim against him only if he was in privity with someone who was. *See id.* We conclude that there is privity here.

"'Privity' is recognized as a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). We have recognized privity in three circumstances: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

Weeden is not a successor in interest and did not control *Sacks I*. So he is only in privity with named defendants in *Sacks I* if his interests were adequately represented. *See id.* That is, a named defendant in *Sacks I* must have been "so closely aligned to [Weeden's] interests as to be his virtual representative." *Id.* at 1267 (citation omitted). A vicarious liability relationship between an employer and employee can create the requisite privity here. *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288–89 (5th Cir. 1989) (collecting cases from the First, Seventh, Ninth, and D.C. Circuits).

Weeden's interests were adequately represented in *Sacks I* by TSU, which employs Weeden and is vicariously liable for his conduct. In *Sacks I*, Sacks built her claims against TSU in part on allegations about Weeden's conduct as professor and former associate dean of the law school. And when Sacks moved to amend her complaint in *Sacks I*, she also sought to name Weeden as a defendant. Only after the *Sacks I* district court denied her motion to amend did she file the current suit. On these facts, TSU adequately represented Weeden's interests in *Sacks I*. So Weeden is in privity with a *Sacks I* party.

Now to the fourth res judicata factor. "[A] Title VII plaintiff is free to bring successive actions, claiming in each that his employer has taken retaliatory actions against him more recent than the prior lawsuit." *Dawkins v. Nabisco, Inc.*, 549 F.2d 396, 397 (5th Cir. 1977) (per curiam). The parties agree that August 29, 2019, was the last day that Sacks could move to amend her complaint in *Sacks I*. Accordingly, res judicata bars Sacks from bringing an EPA retaliation claim based on conduct occurring before August 29, 2019. Any EPA claim based on that conduct could have and should have been raised in *Sacks I*. *See Davis*, 383 F.3d at 313. But to the extent Sacks's EPA claim is based on conduct after August 29, 2019, it is not barred.

C

No. 22-20541

Finally, we consider Sacks's § 1983 claims against the Individual Defendants. We look again to the first and fourth res judicata factors. *See Test Masters*, 428 F.3d at 571. We have already established that Weeden is in privity with a *Sacks I* party. And, as with Sacks's EPA claims, res judicata bars Sacks from bringing § 1983 claims against the Individual Defendants based on conduct occurring before August 29, 2019. Because Sacks alleges only post–August 29, 2019 conduct as to Walker, only her claim against Walker survives res judicata.

## IV

Having tackled res judicata, we now turn to whether Sacks states claims that survive a motion to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "But we 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The well-pleaded facts must "permit the court to infer more than the mere *possibility* of misconduct." *Id.* at 679 (emphasis added).

## A

We start with Sacks's Title VII constructive discharge claim. "A claim of constructive discharge . . . has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point

8

No. 22-20541

where a reasonable person in his position would have felt compelled to resign. [And] he must also show that he actually resigned." *Green*, 578 U.S. at 555.

To determine whether a reasonable person would feel compelled to resign, we have considered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alteration in original) (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).

Sacks does allege that the dean "add[ed] time-consuming, unnecessary, and menial tasks such as rearranging the order of subjects taught in classes[,] . . . call[ing] many extra faculty meetings[,]" adding "new methods of attendance recording," and assigning torts professors to "correct and edit 25 proposed Kaplan torts questions."

Even if we assume these tasks are menial, Sacks's constructive discharge claim still falls short. She fails to allege any other factor that would make a reasonable person feel compelled to resign. *See Bunge Corp.*, 207 F.3d at 782.

She does not allege a demotion, reduction in salary, reduction in job responsibilities, reassignment to work under a younger supervisor, or offers of early retirement. *See Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021) (looking for these factors); *Perret v. Nationwide Mut. Ins.*, 770 F.3d 336, 338–39 (5th Cir. 2014) (same).

And she fails to allege facts showing that TSU "badger[ed], harass[ed], or humiliate[ed] [her] . . . to encourage [her] resignation." *Bunge Corp.*, 207 F.3d at 782. Again, we do not accept as true Sacks's bald, conclusory allegations. *Heinze*, 971 F.3d at 479.

Sacks mainly alleges systemic problems at TSU: the claimed gender pay gap, the racial discrimination lawsuit against Douglas and his subsequent promotion, the American Bar Association's public censure of TSU after sexual discrimination allegations, the American Bar Association's demands on TSU to remedy the pay gap, and TSU's conduct toward other female professors. Aside from the pay gap, these allegations do not personally implicate Sacks.

As for conduct that allegedly targeted Sacks, Sacks alleges that TSU investigated her for discrimination but found no evidence that Sacks discriminated, that "Walker threw her hair into [Sacks's] face in the law school lobby," and that Walker yelled at Sacks that she couldn't park in a church parking lot. But no facts suggest that these were more than personal disputes between Walker and Sacks. Indeed, their parking lot confrontation was not even on school property. Sacks also alleges that Walker "has made comments about [her] race," but she does not identify the comments or their context.

In addition, Sacks claims that Weeden "deprive[d] her of a sabbatical and research monies" and "encouraged others to vote against [Sacks]" to deny her those benefits. But at least as to the sabbatical, this alleged deprivation occurred almost *three years* before Sacks resigned. This lack of temporal proximity between the alleged discrimination and her resignation undermines her constructive discharge claim. *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 407 (5th Cir. 2021).

Even assuming this conduct is harassment, Sacks alleges no facts that show that this conduct was "calculated to encourage [her] resignation." *Bunge Corp.*, 207 F.3d at 782. Though Sacks alleges that she "reasonably felt compelled to resign because it was clear that the racism and harassment would not be addressed," this statement is conclusory. *See Heinze*, 971 F.3d at 479.

Looking only to her factual allegations, Sacks does not allege conduct by TSU that plausibly—not just possibly—states a constructive discharge claim. *See Iqbal*, 556 U.S. at 679.

B

Next, we consider whether Sacks states EPA retaliation claims against TSU and the Individual Defendants based on conduct after August 29, 2019. *See* 29 U.S.C. § 215(a)(3).

The EPA disallows discharge or retaliation "because such employee has filed any complaint." *Id.* EPA retaliation claims are analyzed under Title VII's framework. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469–70 (5th Cir. 2021). To state an EPA retaliation claim, "a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Id.* at 469 (internal quotation marks omitted). To be a protected activity, "the employee's conduct must have 'opposed' the employer's practice" and the plaintiff must have "*reasonably believed* the practice was unlawful." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209–10 (5th Cir. 2021). "'Adverse employment action' is a materially adverse action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Lindsley*, 984 F.3d at 470 (quoting *Burlington N. & Santa Fe R.R. v. White*, 548 U.S. 53, 68 (2006)).

Sacks claims that TSU and the Individual Defendants retaliated against her for filing *Sacks I*. Again, we look only to conduct after August 29, 2019. And we disregard any bald, conclusory statements. *See Heinze*, 971 F.3d at 479. Even spotting Sacks that her resignation is an adverse employment action, she does not show a causal link between her filing *Sacks I* and her resignation. *See Lindsley*, 984 F.3d at 469–70.

Sacks alleges that, in "2019-2020," "Walker threw her hair into" Sacks's face in the law school lobby and separately yelled at Sacks, "You can't park here!" in a church parking lot. Even if we assume that this happened *after* August 29, 2020, Sacks does not allege any facts showing that Walker's behavior was motivated by *Sacks I*.

Similarly, Sacks alleges that the dean introduced "new methods of attendance recording and micromanag[ed] the order [in] which the torts topics were taught." She states that "the female professors had to perform burdensome and time-consuming work that the males did not have to perform." But as the district court notes, Sacks does not offer any facts showing that the dean's "broad changes in school procedures and policies, or non-particularized changes to faculty workload, were designed to retaliate against Sacks." *See Sacks v. Tex. S. Univ.*, No. CV H-22-299, 2022 WL 4227257, at *3 (S.D. Tex. Sept. 12, 2022).

Sacks points out other conduct that, even assuming it occurred after August 29, 2019, lacks a causal link to *Sacks I*. For example, she does not show that the law school's decision to promote Anga, "despite multiple harassment complaints on file [against her] with TSU's Human Resources," was causally linked to *Sacks I*. Same for Sacks's allegation that a law school professor was promoted to dean after advising a female student not to make a Title IX sexual assault complaint. And same for Sacks's

No. 22-20541

allegations that other female professors resigned and that TSU has been paying women less than men.

Sacks argues that we must take as true that there was an "agenda to overwork, underpay, and abuse females in the law school, and white females in particular" in 2019. But this is a bald allegation of discriminatory conduct. *See Heinze*, 971 F.3d at 479. Because this and other allegations like it in Sacks's complaint are conclusory, we don't assume they are true. *See id.*

Sacks thus fails to state EPA claims against TSU and the Individual Defendants.

## C

Finally, we consider Sacks's § 1983 claim against Walker. To state a claim, Sacks must show that Walker acted under color of state law. *See Tyson v. Sabine*, 42 F.4th 508, 521 (5th Cir. 2022). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988).

Again, the only post–August 29, 2019 incidents are Sacks's confrontations with Walker in the law school lobby and in a church parking lot. No facts suggest that Walker "use[d] [her] official power [at the law school] to facilitate [these] actions." *See Tyson*, 42 F.4th at 522. Walker and Sacks's confrontation in the church parking lot did not occur at the school. And during neither incident did Walker assert her authority or even mention law school affairs. As TSU argues, these facts merely indicate a personal conflict between Sacks and Walker. *See Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (per curiam) (holding that an "altercation ar[ising] out of an argument over family and political matters" wasn't under color of law).

No. 22-20541

Thus, Sacks fails to allege that Walker acted under color of state law and thus fails to state a § 1983 claim.

V

Res judicata does not bar Sacks's Title VII constructive discharge claim, her EPA claims based on conduct after August 29, 2019, and her § 1983 claim against Walker. However, Sacks fails to state claims that survive a motion to dismiss. Accordingly, we do not reach the question whether her case should be reassigned.

We AFFIRM.