# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-10540

---

LONNIE KADE WELSH,

*Plaintiff—Appellant*,

*versus*

ROSS HESTER, *Chief*,

*Defendant—Appellee*.

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2025

Lyle W. Cayce
Clerk

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:18-CV-20

---

CONSOLIDATED WITH

---

No. 24-10576

---

LONNIE KADE WELSH,

*Plaintiff—Appellant*,

*versus*

LAMB COUNTY, TEXAS; ROSS HESTER; SCOTT SAY; RICKIE REDMAN; CITY OF LITTLEFIELD,

No. 24-10540
c/w No. 24-10576

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:20-CV-77

_____

Before HIGGINSON, HO, and WILSON, *Circuit Judges*.
STEPHEN A. HIGGINSON, *Circuit Judge*:[*]

Plaintiff-Appellant Lonnie Kade Welsh, a civil commitment facility resident, alleged that facility staff assaulted him. When Welsh reported the assault to the police, the staff stated that the injuries presented by Welsh were self-inflicted. Based on a magistrate's warrant supported by an affidavit, Welsh was arrested for falsifying evidence in an investigation; a grand jury presented an indictment; Welsh was tried and convicted. But the conviction was overturned on appeal because Welsh's conduct was not criminalized by the statute. *Welsh v. State*, 570 S.W.3d 963, 968 (Tex. App. 2019).

In a first set of proceedings, Welsh sued an arresting officer and others under 42 U.S.C. § 1983, alleging that he was arrested without probable cause in violation of the Fourth Amendment. After a hearing, several of the claims were dismissed as barred by Welsh's conviction under *Heck v. Humphrey*, 512 U.S. 477 (1994). We vacated the dismissals in relevant part after Welsh's conviction was overturned. *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 316–17, 321 (5th Cir. 2021). On remand, the district court granted summary judgment for the defendant officer based on qualified immunity.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-10540
c/w No. 24-10576

After the first set of claims was dismissed, but before his conviction was overturned, Welsh filed a second suit alleging that he was deprived of due process at his trial. The district court dismissed these claims, but on appeal we remanded for the district court to consider whether the claims were precluded in view of the first suit. *Welsh v. Lamb Cnty.*, No. 22-10311, 2024 WL 81580, at *2 (5th Cir. Jan. 8, 2024). The district court dismissed several of the claims as barred by res judicata or the claim splitting doctrine.

Welsh has appealed in both cases; we consolidate the appeals. In the first case, we affirm the summary judgment. In the second case, we affirm the dismissal in part, but vacate as to the claims that accrued during or after trial because it has not been shown that Welsh had a meaningful opportunity to bring those claims in the first case.

I.

In 2015, Welsh was committed to the Texas Civil Commitment Center (TCCC). On November 13, 2017, Welsh allegedly became combative towards TCCC staff. He was restrained. Welsh then asked the TCCC's director of security to call police so that he could report that he was assaulted by facility staff. Welsh spoke with the Littlefield, Texas, Police Chief, Defendant-Appellee Ross Hester, and said that his face had been slammed into the floor by TCCC staff. Hester observed that Welsh had injuries to his face and hands.

But, reviewing video documentation and witness statements, Hester concluded that Welsh had not been assaulted. On Hester's viewing, the video did not clearly show that Welsh was injured by the staff's restraints. And eyewitness and other contemporaneous accounts indicated that Welsh's injuries were self-inflicted.

Following the November 13 incident, Welsh was isolated at TCCC from November 13 to 27, 2017. Hester presented information to the County

3

No. 24-10540
c/w No. 24-10576

Attorney for Lamb County, Texas, that Welsh had made a false report to a police officer under Texas Penal Code § 37.08, and that Welsh had tampered with or fabricated physical evidence under Texas Penal Code § 37.09. Based on an affidavit from Hester, a magistrate issued an arrest warrant on November 27, 2017, and Welsh was taken into custody by Lamb County on November 28, 2017. Welsh was prosecuted only for allegedly tampering with physical evidence. He was convicted on May 18, 2018, and was sentenced to 11 years' imprisonment.

In February 2019, the Amarillo Court of Appeals issued a judgment of acquittal because Welsh's conviction was unsupported by the evidence. *See* 570 S.W.3d 963. The statute of conviction required Welsh to present a "thing" in an investigation "with knowledge of its falsity." *See* TEX. PENAL CODE § 37.09(a)(2). As the Court of Appeals pointed out, even assuming the injuries were a "thing," they were "undisputedly real." 570 S.W.3d at 967.

Two separate proceedings in federal district court arose out of this nexus of events.

The first we refer to as *Welsh I*. In January 2018, before his trial, Welsh sued several defendants in case 5:18-CV-20 in the Northern District of Texas, including Hester. Welsh asserted claims directed to the force used by TCCC staff, his arrest and detention, and his conditions of confinement, among other issues. As relevant here, Welsh claimed that TCCC Security Director Christopher Woods and Hester conspired to bring charges against him, resulting in his arrest without probable cause. He further claimed that his arrest was the result of collusion among Correct Care Recovery Solutions (the private company that operated TCCC), the City of Littlefield Police Department, and the Lamb County Attorney's Office through County Attorney Rickie Redman. Other defendants included Scott Say, identified as

the District Attorney for Lamb County, and Albert Garcia, identified as the City of Littlefield Chief of Police, among others. The district court held a hearing under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), to flesh out Welsh's allegations.

On April 24, 2019, the district court dismissed Welsh's claims. The court ruled that *Heck* barred the excessive force, false arrest, and unlawful detention claims, finding that success on those claims "would necessarily imply the invalidity of Welsh's underlying criminal conviction." The claims against Redman and Say were dismissed on grounds of prosecutorial immunity.

Welsh appealed. *See* 845 F. App'x 311. The appeal was decided in February 2021 after Welsh's conviction was overturned, so the claims were no longer *Heck*-barred. This court accordingly vacated in part, and remanded, the district court's dismissal as to certain excessive-force claims and the claim that Woods and Hester conspired to make an arrest without probable cause. *Id.* at 316–17, 321.

On remand, several defendants filed responsive pleadings, and Welsh sought leave to amend his complaint with allegations that he had been deprived of due process in the trial proceedings. An amended complaint accompanying the motion was dated July 1 by Welsh; these documents were filed by the clerk of the district court on July 8, 2021. Welsh's motion was denied on grounds of delay.

Hester then moved for summary judgment, asserting qualified immunity. The district court analyzed Welsh's conspiracy claim against Hester as a Fourth Amendment claim. The district court accepted Hester's qualified immunity defense on the basis that no constitutional violation had been shown. The court reasoned that the grand jury proceedings insulated

Hester from liability for arresting Welsh without probable cause. The district court granted summary judgment for Hester, and denied Welsh's motion for reconsideration. Welsh and the remaining defendants stipulated to dismissal with prejudice under Rule 41(a)(1)(A)(ii). In June of 2024, Welsh filed a timely notice of appeal. The appeal was docketed in this court as case 24-10540.

We now take a step back to March 2020, while the first appeal in *Welsh I*—where we would eventually remand because the *Heck* bar had been dissolved—was still pending in this court. At that time, proceedings began in what we term *Welsh II*. Welsh filed a complaint docketed as case 5:20-CV-77 in the Northern District of Texas. As amended, the complaint sought damages under 42 U.S.C. § 1983 from Defendants-Appellees Lamb County, the City of Littlefield, Hester, Say, and Redman.

Certain claims in the complaint involved Welsh's detention pending trial or otherwise overlapped with *Welsh I*. Welsh again alleged that his confinement was unlawful under the Fourth Amendment for reasons related to the seizure of his person without probable cause. Welsh further claimed, as he had in *Welsh I*, infringements of his right of access to the courts, but this time grounded those claims in the defendants' alleged failure to process his claims of assault and unlawful restraint and confinement.

Welsh brought several other new claims arising out of an alleged lack of due process during his prosecution and trial. As to the prosecution, Welsh stated that he was selectively prosecuted on account of class or status, and that his equal protection rights were abridged. As to the trial, Welsh stated that Say, Redman, and Hester made false statements during the criminal proceedings, alleging in particular that Hester committed perjury during a suppression hearing; that Redman had used inflammatory evidence to procure a false verdict; that Say and Redman conspired with Woods to

No. 24-10540
c/w No. 24-10576

dispose of evidence; and broadly, that his punishment was unconstitutional not only because of the malicious prosecution but also because he was not competent to stand trial. As a consequence of these deficiencies, Welsh now alleged that his confinement after he was convicted was unlawful.

The district court transferred the case to a magistrate judge for screening pursuant to 28 U.S.C. § 1915. The magistrate judge recommended dismissal with prejudice. Welsh filed objections and requested leave to amend. The district court overruled the objections, adopted the report, and dismissed the claims with prejudice, denying the motion for leave to amend as moot. The court denied Welsh's motion for reconsideration.

Welsh appealed. In view of *Welsh I*, this court raised the question of whether the claims were barred by res judicata or the claim splitting doctrine, remanding for the district court to address the issue in the first instance. 2024 WL 81580, at *2.

On remand, the magistrate judge found that the claims against Hester were not barred by res judicata because final judgment had not yet been entered as to Hester in *Welsh I*. But because the allegations of unlawful conduct occurred before the filing of the complaint in *Welsh I*, and because the claims "ar[o]se from the same nucleus of operative fact," the magistrate judge found the claims against Hester barred by the claim splitting doctrine. The report found that the claims against Say and Redman were barred by res judicata. The report found that Littlefield was in privity with *Welsh I* defendant Garcia, so that those claims were barred by res judicata too. And the report found that Welsh failed to state a claim against Lamb County under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

The district court overruled Welsh's objections and adopted the report and recommendation, dismissing Welsh's claims with prejudice.

7

No. 24-10540
c/w No. 24-10576

Welsh timely appealed. The appeal was docketed in this court as case 24-10576.

## II.

We first address certain procedural matters.

## A.

First, Welsh has moved in case 24-10576 for judicial notice of the record in case 24-10540. We construe this as a motion to consolidate the appeals. *See* FED. R. APP. P. 3(b)(2). Noting that the principal question in case 24-10576 is substantially whether the issues are the same as those in case 24-10540, we GRANT the motion and consolidate the appeals. *See Wentz v. Kerr-McGee Corp.*, 784 F.2d 699, 700 (5th Cir. 1986).

## B.

Second, Welsh has moved in case 24-10540 for this court to appoint counsel, stating that he is able to pay for counsel but has not been able to obtain counsel on his own because of his institutionalization. Hester opposes on the basis that Welsh has ably advocated for himself.

Because party presentation is fundamental to our adversarial system of litigation, we appoint counsel when it is necessary to the proper exercise of the judicial power. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). But we have not extended an automatic right to appointed counsel to damages claims under § 1983. *Brown v. Tarrant Cnty.*, 985 F.3d 489, 499 (5th Cir. 2021). Our "decision to appoint counsel" is therefore multifactorial, involving at least "the type and complexity of the case," a litigant's "ability adequately to present and investigate his case," points of conflict in the record or in the law that "require skill" to be adequately presented, and "the likelihood that appointment will benefit" the parties and the court by "[']assisting in a just determination.'" *See Cooper v. Sheriff of*

8

No. 24-10540
c/w No. 24-10576

*Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 212, 213 (5th Cir. 1982)).

No liberty interests are directly at stake; Welsh has not challenged his civil confinement itself. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The governing law is established. The district court properly took care to ensure that Welsh, an institutionalized person proceeding pro se, could state his best case on the facts. With the benefit of this record and Welsh's able argument despite his uncounseled status, and noting that we must generously construe the arguments of an uncounseled litigant, *Sineneng-Smith*, 590 U.S. at 375, we DENY the motion.

## C.

Finally, Hester's brief in case 24-10540 urges this court to consider sanctioning Welsh for alleged abuses in previous litigation. No substantial reference is made to the propriety or merits of the present appeals. Hester has made no attempt to argue that "the result" here "is obvious or the arguments of error are wholly without merit." *Coghlan v. Starkey*, 852 F.2d 806, 811 (5th Cir. 1988) (per curiam). If he had, we would disagree. We decline the invitation to impose sanctions on our own motion.

## III.

We now turn to the merits, starting with *Welsh I* and the set of claims therein now asserted against Hester.[1] Welsh claims, as was previously remanded by this court, that Hester conspired with Woods to bring about Welsh's false arrest. Welsh does not challenge the district court's analysis

---

[1] As a preliminary matter, we note that a judgment where claims against some defendants have been voluntarily dismissed with prejudice is an appealable final judgment under 28 U.S.C. § 1291. *See Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341, 343–44 (5th Cir. 2020) (en banc).

that he has failed to demonstrate the requirements of 42 U.S.C. § 1985(3), and appears to assent in the district court's analysis of his claim under 42 U.S.C. § 1983's cause of action.

A § 1983 conspiracy claim requires "an actual violation of section 1983." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). Welsh argues that he has been "depriv[ed] of . . . rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, because he was arrested and detained without probable cause in violation of the Fourth Amendment, and because he was deprived of due process at his trial. The district court granted summary judgment to Hester on the Fourth Amendment claims, disallowed Welsh from raising the due process claims, and declined to appoint counsel for Welsh. We address each issue in turn.

## A.

A summary judgment is reviewed de novo. *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 257 (5th Cir. 2001). "Summary judgment is appropriate only where there is no genuine issue of material fact." *Id.* "If the evidence is such that a reasonable jury could return a verdict for the non-moving party, there is a genuine issue of material fact." *Id.* "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Id.* at 258.

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.* at 654 (quoting *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). The plaintiff "must offer

more than 'mere allegations,'" but "'absolute proof'" is not necessary to raise a genuine issue of material fact. *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). And because "the plaintiff is the non-moving party," we still "construe all facts and inferences in the light most favorable to the plaintiff." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc).

"This court reviews the denial of a motion for leave to amend a complaint for abuse of discretion." *Crosswell v. Martinez Cecias Rodriguez*, 120 F.4th 177, 184 (5th Cir. 2024). But a district court's discretion to deny leave is limited "'unless there is a substantial reason' for denying leave to amend." *Id.* (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

The denial of a motion to appoint counsel is reviewed for abuse of discretion. *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018).

## B.

The Fourth Amendment protects against "unreasonable . . . seizures." U.S. CONST. amend. IV. "'[T]he general rule [is] that Fourth Amendment seizures are "reasonable" only if based on probable cause' to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). An arrest that lacks probable cause because it is based on a deficient warrant violates the Fourth Amendment. *Whiteley v. Warden*, 401 U.S. 560, 568–69 (1971).

The district court granted summary judgment for Hester based on qualified immunity because Welsh had not shown a genuine issue of fact as to whether his arrest violated the Fourth Amendment. Specifically, the district court concluded that liability was barred by the independent

11

intermediary doctrine.[2]  The court explained that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party," *see McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)), but that "the chain of causation remains intact if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant,'" *see Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)).  The court described the grand jury that indicted Welsh for violating § 37.09 as an independent intermediary, and stated that "Welsh has not provided *any* competent summary judgment evidence demonstrating that Hester participated in the grand jury proceedings by, for example, testifying or submitting an affidavit. . . . Nor has Welsh shown that Hester tainted the grand jury deliberations through false testimony or false documents."

i.

Welsh first argues that under *Malley v. Briggs*, 475 U.S. 335 (1986), the information supporting the warrant and indictment was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See id.* at 345.  Even if we accept the district court's position that the

---

[2] The district court alternatively decided that Hester had probable cause to charge Welsh with violating § 37.08 of the Penal Code for making a false report to a police officer. *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails.").  But Welsh was arrested after both charges were presented to the County Attorney, who we are told decided not to pursue the false statement charge.  At what point that determination was made is not clear, as it appears warrants issued on both charges.  The approach we take avoids any questions about detaining a suspect based on charges the prosecution of which has been declined. *Cf. Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

indictment, once it issued, immunized Hester from liability for Welsh's detention, that would not resolve whether Welsh's detention was reasonable for the period *preceding* the indictment.  Welsh appears to have been taken into custody by Lamb County on November 28, 2017, but was indicted on January 4, 2018.  During that period, only the magistrate interposed an intermediary upon the chain of causation.

To this end, Welsh argues that the affidavit supporting the warrant was insufficient to provide probable cause that the offense had been committed as a matter of law.  Welsh urges that legal mistakes in the magistrate's determination rendered the warrant obviously deficient.  The argument in essence is that the absence of probable cause that Welsh had violated § 37.09 should have been obvious for the reasons explained by the Amarillo Court of Appeals—that it should have been facially apparent that Welsh's injuries, however caused, could not have amounted to presenting false evidence in an investigation.  But, although it is true that an unreasonable mistake as to the law may make a search or seizure unreasonable under the Fourth Amendment, *see Heien v. North Carolina*, 574 U.S. 54, 61 (2014), Welsh has not sufficiently shown a genuine issue as to whether Hester's reliance on the magistrate's assessment of § 37.09 was unreasonable.  *See Malley*, 475 U.S. at 346 n.9.

Welsh similarly impugns the factual basis for the warrant as facially incomplete.  Welsh appeals to the principle that "a facially invalid, 'barebones' affidavit . . . does not supply the factual basis for probable cause necessary for issuance of an arrest warrant."  *Spencer v. Staton*, 489 F.3d 658, 661–62 (5th Cir. 2007), *opinion withdrawn in part on reh'g* (July 26, 2007).  Although the affidavit itself was sparse, the warrant stated that it relied on Hester's complaint under oath, which in another attached affidavit incorporated an attached copy of Hester's police report.  *See Illinois v. Gates*, 462 U.S. 213, 236 (1983).  Hester's preliminary incident report describes

Hester's interview of Welsh, and states that Hester viewed the video of the use of force and that he saw "no signs [of] physical injury" on the video. Hester concluded that, in his view, "Welsh's injuries were self-inflicted to gain leverage against the Center because he will be receiving discipline for his behavior." The full case report recapitulated the incident report and supplemented it with detailed summaries of incident reports written by TCCC staff.

The incident report provided "supporting facts from which a magistrate could independently determine probable cause." *See Blake v. Lambert*, 921 F.3d 215, 220 (5th Cir. 2019). We agree with the district court that this is not a case where the magistrate issued a warrant on the basis of an affidavit "simply identif[ying Welsh], recit[ing] the charged offense, and cit[ing] the corresponding . . . statutes." *See id.* Welsh has not shown that there is a genuine issue of fact whether the magistrate's judgment of probable cause was sufficiently unsupported by the evidence to support a *Malley* claim.

ii.

Welsh also claims under *Franks v. Delaware*, 438 U.S. 154 (1978), that the warrant for his arrest was procured by Hester's misstatements. Again, Welsh takes issue with the state's tendentious interpretation of Texas Penal Code § 37.09. Welsh argues, for example, that the evidence of the charged conduct occurred before the start of Hester's investigation, so that Welsh could not have intended by injuring himself to use false evidence in that investigation. This, however, does not tend to show that Hester tainted the warrant by providing misleading information. Instead, these are claims that probable cause was *lacking* rather than fraudulently procured, amounting to the *Malley* claims we have addressed above.

But Welsh also argues that Hester procured the arrest with misleading information. Welsh urges that video evidence "clearly refutes" any

14

contention that he was not subject to excessive force by TCCC staff. Welsh further argues that Hester "ignored easily discoverable evidence" that witness statements were false. We construe these as arguments that the factual basis for the warrant was recklessly incomplete. *See Melton*, 875 F.3d at 264.

"[I]n a *Franks* case where a second intermediary is involved, a plaintiff need only show that the deliberations of the intermediary were tainted such that the second intermediary, like the first, did not have 'all the facts' before it necessary to render an independent determination of probable cause." *Wilson v. Stroman*, 33 F.4th 202, 210 (5th Cir. 2022) (quoting *Winfrey v. Rogers*, 901 F.3d 483, 497 (5th Cir. 2018)). But Welsh has not identified misleading information provided or key information omitted by Hester, at any stage, that was eventually "material to the determination of probable cause." *See Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). With respect to Welsh's argument that the evidence is not inconsistent with a showing that he was assaulted, we agree with the district court that Welsh does not explain why that "would have deprived Hester of probable cause" rather than introducing another theory of the same evidence. As the district court noted, "an affiant's presentation of one plausible 'version of . . . disputed facts[']" does not necessarily establish taint. *See Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022) (quoting *Anderson v. City of McComb*, 539 F. App'x 385, 387 (5th Cir. 2013)). And Welsh's argument that Hester failed to corroborate key witness accounts fails to address directly contradictory evidence in the record without any substantial support of its own, which we find insufficient to permit us to discern a genuine issue of fact.

Accordingly, we find no basis to disturb the summary judgment on the merits of Welsh's Fourth Amendment claims.

No. 24-10540
c/w No. 24-10576

## C.

Welsh urges that the district court should have allowed him to argue that Hester perjured himself at Welsh's criminal trial and at a suppression hearing. Welsh attempted to raise this argument in two ways. First, Welsh sought to bring a separate due process claim directed to false charges based on "intentionally fabricate[d] evidence." *See Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015). Second, Welsh attempted to use Hester's alleged perjury as additional evidence of a conspiracy to deny Welsh his constitutional rights. Welsh argues that the district court should have allowed him to amend his complaint to add this additional claim, and that at summary judgment the court should not have excluded a due process theory as untimely. We address the denial of leave to amend, then the forfeiture determination.

### i.

The district court first dismissed *Welsh I* on April 24, 2019, nearly a year after Welsh's trial. After that dismissal was appealed and vacated, several of the defendants filed responsive pleadings. Hester's answer was filed June 1, 2021. Welsh then attempted to amend his complaint to support his conspiracy claim with allegations of Hester's perjured testimony, apparently on July 1, 2021. The district court denied Welsh leave to amend. Because Hester's answer was filed more than 21 days before Welsh's motion for leave, the court said that the time had elapsed for amendment of the claims against Hester as a matter of course under Rule 15(a)(1)(B). Considering whether to exercise its discretion to allow leave under Rule 15(a)(2), the court stated that the complaint had already been amended, that Welsh had opportunity to elaborate the basis for his claims at the *Spears* hearing, and that amendment would be futile because the court had already dismissed the claims before the appeal. Welsh does not contest the Rule

16

15(a)(1) analysis, so the issue is whether he should have been permitted to amend the complaint in the interests of justice.

Welsh's primary argument is that he "could not have raised" the issue of Hester's perjury "because the events happened after Welsh moved to amend the complaint" previously. Welsh points out that the district court agreed that "Welsh could not have raised a claim based on perjured trial testimony" in his amended complaint because it was drafted "no later than May 8, 2018—prior to the start of his criminal trial." We agree with Welsh on this point, and we are inclined to disagree with the district court that amendment would have been futile because it had been "thoroughly litigated" by the first dismissal whether Welsh received due process at his trial.

We think, however, that the district court's decision on this point may be safely affirmed without prejudice to Welsh's rights. Insofar as Hester's alleged perjury merely provided additional evidence of a conspiracy to deprive Welsh of his Fourth Amendment rights, Welsh was not prejudiced by the lack of amendment because he was able to introduce (and has introduced) the trial record in support of his existing claims. Insofar as Welsh sought to introduce a new, freestanding claim of unfair trial proceedings in violation of the Fourteenth Amendment, the district court reasonably determined that it was too late in the proceedings for Welsh to assert a recently accrued claim. Because we allow Welsh to pursue this claim in *Welsh II*, we need not disturb the district court's ruling to allow him to pursue the same claim in *Welsh I*.

ii.

Welsh again pressed his claims that Hester's testimony was perjured at the summary judgment stage. The district court excluded this "new

theory of recovery" as untimely and analyzed Welsh's arguments as Fourth Amendment claims.

Welsh argues, citing our decision in *Welsh I* as the law of the case, that his claims should have been reviewed under the Fourteenth Amendment instead. *See* 845 F. App'x at 320–31. We disagree with this reading of our decision in *Welsh I* and find no prejudice to Welsh in the district court's forfeiture determination for substantially the reasons stated above.

## D.

Finally, Welsh argues that the district court should have appointed counsel. A trial court is "required to appoint counsel" for a plaintiff asserting claims under § 1983 when "the case presents exceptional circumstances." *Ulmer*, 691 F.2d at 212. Welsh has not made that showing. Welsh's briefing adequately develops his claims and was construed with due consideration for his uncounseled arguments by the district court. For similar reasons as described above in our ruling on Welsh's motion to this court for appointment of counsel, we see no abuse of discretion in the district court's decision not to appoint counsel.

## IV.

We now turn to *Welsh II*. In those proceedings, Welsh has also attempted to assert both false arrest claims and claims that perjury and evidence-tampering deprived him of due process at his trial.

Describing a general overlap with the claims in *Welsh I*, the district court dismissed Welsh's claims against Hester under the claim splitting doctrine and dismissed Welsh's claims against several other defendants based on res judicata. The court dismissed Welsh's claims against Lamb County for failure to state a claim under *Monell*. We address the preclusion issues first, then municipal liability.

No. 24-10540
c/w No. 24-10576

A.

The dismissal of a complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) is reviewed de novo. *Green v. Atkinson*, 623 F.3d 278, 280 (5th Cir. 2010) (per curiam). We use "the same standard used to review a dismissal pursuant to . . . Rule 12(b)(6)." *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999). "In determining whether dismissal was proper, we must assume that all of the plaintiff's factual allegations are true." *Id.* "We may uphold the magistrate judge's dismissal . . . 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.'" *Id.* (quoting *McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 160 (5th Cir. 1995)). A dismissal based on res judicata is a decision on the merits that is reviewed de novo. *See Cook v. Marshall*, 126 F.4th 1031, 1035 (5th Cir. 2025).

The dismissal of a complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) is reviewed for abuse of discretion. *Harper v. Showers*, 174 F.3d 716, 718 n.3 (5th Cir. 1999). We review for abuse of discretion whether litigation should be dismissed as duplicative because a plaintiff has split claims that ought to have been brought at one fell swoop. *Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023).

B.

The district court dismissed Welsh's claims against Hester in *Welsh II* based on the rule against claim splitting. The rule against claim splitting "prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." *Gen. Land Off. v. Biden*, 71 F.4th 264, 269–70 (5th Cir. 2023). The rule allows district courts to address the tactic of "filing duplicative complaints to expand the procedural rights [a plaintiff] would otherwise enjoy—particularly for the purpose of circumventing the rules pertaining to

19

the amendment of complaints." *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985).

We have suggested, perhaps somewhat metonymically, that the rule is "rooted in *res judicata.*" *Gen. Land Off.*, 71 F.4th at 270. Accordingly, we have said that "in the context of claim splitting when an earlier suit is pending, the relevant *res judicata* factors are [] whether the parties are the same or in privity and [] whether 'the same claim or cause of action' is 'involved in both suits.'" *Armadillo Hotel Grp.*, 84 F.4th at 628 (quoting *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994)). To determine whether two suits involve claims that are the same, "we look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." *Id.* (quoting *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992)). We therefore assess "whether the two actions were based on the 'same nucleus of operative facts.'" *Id.* (quoting *Eubanks*, 977 F.2d at 171). This is "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

The grouping of claims arising out of a single transaction is based on "the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. a (1982). It "is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined." *Id.*

No. 24-10540
c/w No. 24-10576

That premise is missing, and even absurd, when it would be futile for a plaintiff to bring a claim. The general approach that a plaintiff should bring all claims arising out of a single transaction in one suit

> is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

*Id.* § 26 cmt. c. An analogous situation occurs when claims do not accrue until after the first suit has concluded. For example, if a tort victim dies, a wrongful death claim is not necessarily barred by the victim's previous suit against the tortfeasor. *See Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 578, 591–92 (1974).

The second amended complaint in *Welsh II* asserted seven counts for relief. As against Hester, Welsh claimed that Hester (1) falsely imprisoned Welsh without due process, (2) unreasonably seized Welsh's person without probable cause, (3) selectively prosecuted Welsh, (4) unconstitutionally punished Welsh by confining him for a crime he did not commit, (5) violated Welsh's right of access to the courts by refusing to pursue charges against TCCC employees, and on two counts (6) and (7) violated Welsh's rights of equal protection by prosecuting Welsh "for defending himself."

The district court found that the claims against Hester were not barred by res judicata because final judgment had not yet been entered as to Hester in *Welsh I*. But because the alleged unlawful conduct occurred before the filing of the complaint in *Welsh I*, and because the claims "ar[o]se from

21

the same nucleus of operative fact," the court found the claims against Hester barred by the claim splitting doctrine. The court stated that "[b]oth cases essentially claim that TCCC officers used excessive force against Welsh and, rather than prosecuting the officers, Hester and others unlawfully charged Welsh with evidence fabrication and tampering." And because "Welsh's claims relate to Hester initiating charges against Welsh and jailing him during the pendency of such prosecution," the district court reasoned, "the instant case does not include any 'claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *See Sacks v. Tex. S. Univ.*, 83 F.4th 340, 345 (5th Cir. 2023) (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)).

We agree only as to some of Welsh's claims. As Welsh concedes, the district court correctly assessed that Welsh's claims in Count II that Hester and others improperly detained him in violation of the Fourth Amendment based on an unreasonable interpretation of § 37.09 were already brought in *Welsh I*. Welsh has not shown that the district court abused its discretion in finding that these claims were duplicative.

However, another set of claims was predicated on what happened at Welsh's trial and related proceedings.[3] As Welsh urges, alluding to the *Heck* bar, he "was prevented by operation of law from raising" his claims related to lack of due process at his criminal trial. Indeed, some of these claims may not even have accrued until after conviction. *See McDonough v. Smith*, 588 U.S. 109, 119–20 (2019). At least for practical purposes—we do not think it is fair to suggest that Welsh should have amended his complaint in the midst

---

[3] This includes, to the extent that they were based on events after Welsh's trial, the claims in Count V that Hester and others failed to prosecute charges against TCCC staff. However, Welsh lacked standing to bring claims on this basis. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

of trial—there was no way for Welsh to assert the factual basis for these claims until it was infeasible to do so because they were *Heck*-barred.

Count I was based in principal part on the theory that Hester, with others, attempted to deprive Welsh of due process at his trial, for example by means of perjury or by admitting prejudicial evidence or by preventing Welsh from introducing exculpatory evidence. Similarly, the claim under Count IV that Welsh was incarcerated for a crime he did not commit, to the extent it refers to detention after a wrongful conviction, entails a legally differentiated analysis that could not have been raised any earlier. And it has not been shown that Count III, that the "decision to prosecute Welsh[]" was malicious or based on Welsh's status, or Counts VI and VII, that Welsh was "prosecuted for defending himself," accrued before conviction and could have been pursued in *Welsh I*. Instead, the *Welsh I* district court, in denying Welsh the ability to raise arguments similar to these, treated them as distinct claims sufficiently differentiated from his Fourth Amendment arguments to require supplemental pleading that was foreclosed by the posture of the case. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) ("[Section 1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.").

"We simply cannot treat" *Welsh I* "as extinguishing a claim that did not exist until well into [*Welsh I*] and that [Welsh] was not permitted to bring in that case." *Sacks*, 83 F.4th at 345. We conclude that the district court erred in dismissing the claims that accrued only at or after trial on the basis that they could have been brought at a point in the proceedings when doing so was not feasible.

## C.

The district court similarly found that the claims against Say, Redman, and Littlefield were barred by res judicata. "In order for res

judicata to apply, the following four requirements must be met": (1) "the parties in the instant action must be the same as or in privity with the parties in the prior action in question," (2) "the court that rendered the prior judgment must have been a court of competent jurisdiction," (3) "the prior action must have terminated with a final judgment on the merits," and (4) "the same claim or cause of action must be involved in both suits." *Gulf Island-IV*, 24 F.3d at 746. Whether two claims are "the same" because they derive from the same transaction is assessed in the pragmatic way we have earlier described. *See Petro-Hunt*, 365 F.3d at 395–96.

As for the first factor, both Say and Redman were parties in *Welsh I*, and the district court found that Littlefield was in privity with *Welsh I* defendant Garcia, a conclusion that Welsh does not dispute. With respect to the second factor, there has been no suggestion that the court in *Welsh I* lacked jurisdiction.

The other two factors present more difficult questions. With respect to finality, we note that the district court considered the *Welsh I* judgment final as to Say, Redman, and Garcia, but not as to Hester.[4] Typically, absent an entry of "final judgment as to one or more, but fewer than all, claims or parties" based on an express finding of "no just reason for delay," a "decision, however designated, that adjudicates fewer than all the claims or

---

[4] Hester's motion for summary judgment in *Welsh I* was granted on October 18, 2022, but the court denied Welsh's motion for entry of a Rule 54(b) judgment. Claims in *Welsh I* were thus pending when the dismissal in *Welsh II* was filed on May 28, 2024. The order in *Welsh I* accepting the stipulated dismissal with prejudice under Rule 41(a)(1)(A)(ii), enabling entry of final judgment in that case, was not issued until June 5, 2024. The district court relied on the fact that dismissal of Say, Redman, and Garcia was under 28 U.S.C. § 1915, *see Marts v. Hines*, 117 F.3d 1504, 1505 (5th Cir. 1997) (en banc), apparently assuming that the preclusive effect of a § 1915 dismissal does not depend on whether judgment is final as to all the defendants in a case. Because we determine that any error is not reversible, we need not resolve whether that approach was correct.

the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). We doubt that res judicata can be based on an order that is "interlocutory, and subject to reconsideration" in this way. *See Clausen Co. v. Dynatron/Bondo Corp.*, 889 F.2d 459, 466 (3d Cir. 1989). However, the *Welsh I* judgment is final now. Because the dismissals of Say, Redman, and Garcia are otherwise as considered by the district court, we see no reversible error.

The more important question is whether the "same claim" is involved in both cases. The answer is largely the same as in our claim splitting discussion. The district court considered that Welsh's claims "related to being charged with, and ultimately prosecuted for, tampering with or fabricating evidence." The district court stated that such claims could have been and should have been brought in *Welsh I*.

As before, we can agree with this reasoning to the extent that it applies to claims that Welsh had a fair chance to raise in his complaint, but not to the extent that it applies to claims that accrued at or after trial that were subsequently barred under *Heck* until the opportunity to raise them had vanished. Welsh claimed, for example, that Redman improperly sought to admit prejudicial evidence, that Say and Redman conspired to hide evidence, that Say and Redman relied upon Hester's perjury to procure Welsh's conviction, and that as a result of these infringements Welsh was subjected to unconstitutional imprisonment without due process. We respectfully disagree with the district court's analysis that Welsh had a fair opportunity to bring these claims in *Welsh I*.

No. 24-10540
c/w No. 24-10576

D.

The claims against Lamb County were dismissed for failure to state a claim. Municipalities are subject to suit under § 1983 on direct theories of liability. *Monell*, 436 U.S. at 690–91. Municipal liability may be shown in a variety of ways. "First, a plaintiff can show 'written policy statements, ordinances, or regulations.' Second, a plaintiff can show 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.' Third, even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (footnotes omitted) (first quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018); and then quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)).

Welsh urges that his prosecution and wrongful imprisonment were effectuated by members of the County Attorney's office acting under color of their official positions. But Welsh has not explained why that makes the actions "directly attributable to [Lamb County] 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). We conclude that the claims against Lamb County were properly dismissed.

V.

In case number 24-10540, we AFFIRM the district court's judgment.

In case number 24-10576, we AFFIRM the dismissal as to Lamb County and AFFIRM the dismissal as to Hester, Littlefield, Say, and Redman on Counts II and V, VACATE the dismissal as to Hester, Littlefield, Say, and Redman on Counts I, III, IV, VI, and VII, and REMAND for further proceedings not inconsistent with this opinion.